UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL FULTZ,

    Plaintiff,

vs.
                                     Case No. 06-CV-11687
                                     HON. GEORGE CARAM STEEH

LASCO FORD, INC. and
JOSEPH PONTIAC, INC.,

    Defendants.

_____/

<u>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST LASCO FORD (# 30); DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AGAINST JOSEPH PONTIAC (# 28);
GRANTING LASCO FORD'S MOTION FOR SUMMARY JUDGMENT (# 29), AND
GRANTING JOSEPH PONTIAC'S MOTION FOR SUMMARY JUDGMENT (# 31)</u>

Plaintiff April Fultz moves for partial summary judgment as to her claims against defendants Lasco Ford, Inc. and Joseph Pontiac, Inc. under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691, <u>et</u> <u>seq</u>.. Lasco Ford and Joseph Pontiac move separately for summary judgment of Fultz's ECOA claims and claims under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, <u>et</u> <u>seq</u>.. A hearing on the cross-motions was held on July 30, 2007. For the reasons set forth below, Fultz's motions for partial summary judgment will be DENIED. Lasco Ford's motion for summary judgment will be GRANTED. Joseph Pontiac's motion for summary judgment will be GRANTED.

**I. Background**

April Fultz filed a First Amended Complaint on July 18, 2006 alleging she went to

Joseph Pontiac in Fenton, Michigan on February 15, 2006 to purchase a motor vehicle, and completed a credit application. Joseph Pontiac allegedly accessed her TransUnion consumer credit report, and thereafter took "adverse action" on her credit application by denying credit, refusing to extend credit on substantially similar terms to those for which she applied, or by failing to render a credit decision with 30 days. Fultz also alleges Joseph Pontiac failed to issue an adverse action notice as required by the ECOA. Fultz continues by alleging that she went to Lasco Ford in Fenton, Michigan on February 21, 2006 to buy a vehicle, and again completed a credit application. Lasco Ford allegedly accessed her TransUnion credit report, and then took "adverse action" on her credit application. Fultz alleges Lasco Ford likewise failed to issue an adverse action notice as required by the ECOA. Counts I and II, respectively, allege Lasco Ford is liable under the ECOA and FCRA for negligent and wilful failures to issue an adverse action notice and properly maintain records. Count III seeks injunctive relief against Lasco Ford to enjoin further ECOA violations. Counts IV and V, respectively, allege Joseph Pontiac is liable under the ECOA and FCRA for negligent and wilful failures to issue an adverse action notice and properly maintain records. Count VI seeks injunctive relief against Joseph Pontiac to enjoin further ECOA violations.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining

whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### III. Record Evidence

Fultz testified that, in February 2006, she was interested in buying a car on credit due to the poor condition of a 2001 Ford Taurus she previously purchased from Lasco Ford. Fultz testified that she visited Lasco Ford and dealt with a salesperson named Brandon Sanders. Fultz testified that the two looked at several vehicles, with Sanders attempting to sell Fultz a Ford Escape. Fultz testified she and Sanders spoke over a three day period about Fultz's desire to trade in the Taurus and finance the purchase of another

vehicle. According to Fultz: "Brandon was dealing with numbers and – – he – – he kept coming to me and saying, well, we can do this deal, but it would cost this much money . . . ." Fultz October 11, 2006 Tr., at 16. Fultz testified she and Sanders ultimately could not reach an agreement:

> Q. [by defense Counsel] Well, if [Sanders] said that – – I don't want to argue with you, but he said, we can do this deal at X amount of dollars, what was the deal killer?
>
> A. [by Fultz] The car that he was trying to have me purchase and the amount, the monthly payment or the amount of the car overall, he was trying to – –
>
> Q. Okay. So you didn't like the monthly payment?
>
> A. That he was trying to have me finance.
>
> Q. Okay. So you didn't like the monthly payment he was – –
>
> A. I didn't like the whole deal. The whole deal was not acceptable.

Id. at 17. Fultz continued that she then went to Joseph Pontiac, and likewise could not reach an agreement on the purchase of a vehicle.

> A. [by Fultz] [Joseph Pontiac] said they wanted, you know, they said the same thing as Lasco, they want more deposit, they want cosignors, they want, you know, that's what they said.

Id. at 21. Fultz testified that she left a $500.00 deposit with Joseph Pontiac, which was returned.

Lasco Ford Finance Manager Mark Woollcott first reviewed Fultz's file, then testified that Fultz was at Lasco Ford on February 21, 2006 and submitted a credit application for the purpose of purchasing a 2004 Grand Prix GT. According to the records examined by Woollcott, Lasco Ford submitted a credit application to seven financial institutions based in part on Fultz's credit score: Ford Credit, Americredit, Chase, Capital One, Fifth Third

4

Bank, Huntington Bank, and Wells Fargo. The application sought financing of $21,900.00 on terms of 72 monthly payments of $395.00 and a $500.00 down payment. Fultz's file reflected that Chase, Huntington Bank, and Ford Credit turned down the application, while Capital One and Fifth Third Bank responded with counteroffers. No response was in the file from Americredit or Wells Fargo. Woollcott testified that Lasco Ford itself did not consider financing the deal because "Five Thousand over advance is not the right deal." Woollcott May 11, 2007 Tr., at 110. Woollcott earlier testified that Lasco Ford performs three to five in-house financing deals a year with the approval of Lasco Ford owner Phil Lasco:

> THE WITNESS [Woollcott]: . . . . When [Phil Lasco] does one, it's a good deal. They [the customer] have three, four thousand dollars down. He's not financing a whole lot of money. It's a short term, and it's a good deal for the dealership.

Id. at 68.

Joseph Pontiac Finance Director Cary Woodward reviewed Fultz's file, and testified that Fultz submitted a credit application on February 15, 2006 to trade in her Taurus and purchase a 2004 Pontiac Grand Am. Woodward testified that an application to finance $16,295.00 was submitted to five financial institutions: M&I Dealer Finance, Wells Fargo, WFS Financial, Huntington Bank, and Dort Federal Credit Union. Woodward testified that Wells Fargo, WFS Financial, and Huntington declined credit, while M&I and Dort Federal Credit Union made counter-proposals. M&I proposed financing $14,500.00. Dort Federal Credit Union proposed financing $15,500.00 for 60 months at a loan rate of 8.5 percent. Joseph Pontiac Used Car Finance Manager Jon Phillips corroborated Woodward's testimony.

It is undisputed that Fultz did not finance or otherwise purchase a vehicle from Lasco Ford or Joseph Pontiac. It is also undisputed that neither Lasco Ford nor Joseph Pontiac sent Fultz an ECOA or FCRA adverse action notice.

## IV. Analysis

### A. ECOA

The parties dispute whether Lasco Ford and Joseph Pontiac are "creditors" for purposes of the ECOA who were required to send Fultz a written adverse action notice. The ECOA expressly defines the term "creditor":

> The term "creditor" means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

15 U.S.C. § 1691a(e). 12 C.F.R. § 202.2(l), promulgated by the Federal Reserve Board as part of "Regulation B," further defines the ECOA term "creditor":

> Creditor means a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit. The term creditor includes a creditor's assignee, transferee, or subrogee who so participates. For purposes of § 202.4(a) and (b), the term creditor also includes a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made. A person is not a creditor regarding any violation of the Act or this regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction. The term does not include a person whose only participation in a credit transaction involves honoring a credit card.

(emphasis added). 12 C.F.R. § 202.4(a) and (b) provide:

> (a) Discrimination. A creditor shall not discriminate against an applicant on a prohibited basis regarding any aspect of a credit transaction.
>
> (b) Discouragement. A creditor shall not make any oral or written statement,

6

in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application.

A panel of the Seventh Circuit in Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971 (7th Cir. 2004) held that a dealership was an ECOA "creditor" required to issue an adverse action notice to a credit applicant after the dealership unilaterally decided not to submit the credit application to any lender, effectively taking the "adverse action" of denying credit to the applicant. Id. at 975. The Treadway court initially recognized that the 12 C.F.R. § 202.2(l) definition of a "creditor" as including "a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made" applies only when claims of "discrimination" and "discouragement" are alleged under 12 C.F.R. § 202.4(a) and (b). Id. at 979. This "creditor" definition was found to be inapplicable in the absence of allegations of discrimination or discouragement against the dealership. Id. See also Gillom v. Ralph Thayer Automotive Livonia, Inc., 444 F.Supp.2d 763, 771 (E.D. Mich. 2006). The Treadway court then turned to the 12 C.F.R. § 202.2(l) definition of "creditor" which includes "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." Treadway, 362 F.3d at 979. The Treadway court found the dealership met this § 202.2(l) definition of an ECOA "creditor" based on the cumulative effect of several factors: (1) the dealership regularly decided not to send credit applications to any lender; (2) the dealership regularly restructured sales terms by insisting on more money down, requesting co-signers, or lowering the price of cars to lower the loan-to-value ratio; and (3) the dealership regularly set the annual percentage rate of loans. Id. at 980-981. In Gillom, the district court

considered these same factors and concluded that a dealership was not an ECOA "creditor" absent evidence that the dealership had any input into the credit decisions of any credit company. Gillom, 444 F.Supp.2d at 771.

Fultz does not allege or argue that Lasco Ford or Joseph Pontiac are liable for "discrimination" or "discouragement" under 12 C.F.R. § 202.4(a) or (b). Consistent with the unambiguous wording of 12 C.F.R. § 202.2(l) and the reasoning in Treadway and Gillom, neither Lasco Ford nor Joseph Pontiac meet the "creditor" definition of "person[s] who, in the ordinary course of business, regularly refer[] applicants or prospective applicants to creditors, or select[] or offer[] to select creditors to whom requests for credit may be made." Treadway, 362 F.3d at 975; Gillom, 444 F.Supp.2d at 771.

Turning to an analysis of the 12 C.F.R. § 202.2(l) definition of "creditor" which includes "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit," it is undisputed here that both Lasco Ford and Joseph Pontiac forwarded Fultz's credit applications to several lenders. It is also beyond dispute that neither Lasco Ford nor Joseph Pontiac has a regular practice of unilaterally deciding not to forward credit applications to any lenders without notice to credit applicants. Compare Treadway, 362 F.3d at 980 ("First, Gateway [dealership] admits that it regularly decides not to send an applicant's credit application to any lender.") Lasco Ford's Woollcott testified that the only time Lasco Ford sends an adverse action notice to a credit applicant is when Lasco Ford decides not to submit the application to a lender. Woollcott May 11, 2007 Tr., at 23-24, 26. Joseph Pontiac's Woodward testified that all credit applications are forwarded to at least one lender. Woodward May 3, 2007 Tr., at 72-73. The first and key factor considered in Treadway, whether the dealership regularly

decides not to send credit applications to any lender without notice, is missing here." Treadway, 362 F.3d at 980-981. As explained in a footnote:

> Gateway's actions are distinguishable from the common scenario in which an automobile dealership decides to send a credit application to a limited number of the many lenders with which it works. The Federal Reserve Board has clearly indicated that merely "selecting creditors to whom applications will be made" does not make one a "creditor" for purposes of the notice requirements of the ECOA. See 68 Fed. Reg. 13155. In that situation, at least one lender is given the opportunity to decide whether to extend credit. Therefore, it is the lender, rather than the dealer, that makes the credit decision. Where the dealer decides not to send out the application at all, however, it is making the credit decision. Moreover, if the dealer sends the application to at least one lender, there is another party that can provide notice to the applicant. Where the dealer decides not to send out the application at all, only the dealer can provide notice.

Treadway, 362 F.3d at 980 n. 8. The undisputed facts of this case fit the "common scenario" described above, with Lasco Ford and Joseph Pontiac sending Fultz's credit applications to a limited number of the many lenders with which they work. Woollcott did not submit a credit application to Lasco Ford's Phil Lasco, and Woollcott's selection of creditors to be queried did not make Lasco Ford a "creditor" for ECOA purposes. Id. Under the undisputed facts, it is the potential lenders, rather than dealerships Lasco Ford and Joseph Pontiac, making the credit decisions with respect to Fultz. Id.

This reasoning is supported by both statute and regulation. 15 U.S.C. § 1691(d) of the ECOA provides in pertinent part:

> (d) Reason for adverse action; procedure applicable; "adverse action" defined
>
> (1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
>
> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. . . . .

* * *

> (4) Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.

15 U.S.C. §§ 1691(d)(1), (4). Regulation B provides at 12 C.F.R. § 202.9(g):

> Applications submitted through a third party. When an application is made on behalf of an applicant to more than one creditor and the applicant expressly accepts or uses credit offered by one of the creditors, notification of action taken by any of the other creditors is not required. If no credit is offered or if the applicant does not expressly accept or use the credit offered, each creditor taking adverse action must comply with this section, directly or through a third party. A notice given by a third party shall disclose the identity of each creditor on whose behalf the notice is given.

Lasco Ford and Joseph Pontiac asked creditors such as Wells Fargo and Huntington Bank to make specific extensions of credit to applicant Fultz. Adverse action notices could be issued to Fultz by the creditors queried by the dealerships. 15 U.S.C. § 1691(d)(1), (2), (4); 12 C.F.R. § 202.9(g). Fultz does not allege or argue that she did not receive adverse action notices from the creditors receiving her credit applications from Lasco Ford and Joseph Pontiac. See Brand v. Rohr-Ville Motors, Inc., No. 02 C 7103, 2003 WL 21078022, at *2 (N.D. Ill. May 9, 2003) (unpublished) (dismissing ECOA claim against dealership under 15 U.S.C. § 1691(d)(4) because credit applicants failed to allege they did not receive adverse action notices from *either* the dealership *or* the debt assignee under a retail installment contract). Lasco Ford and Joseph Pontiac are not "creditors" responsible for the failure of any of the financial institutions they queried to issue adverse action notices in the absence of evidence that the dealerships knew or had reason to know that a particular financial institution would not issue an adverse action notice. 12 C.F.R. §

202.2(l); Sovereign Bank v. Catterton, No. Civ.A. 03-5021, 2004 WL 834721, at *4 (E.D. Pa. April 15, 2004) (unpublished).

Fultz argues that, consistent with the definition of a "creditor" found in 15 U.S.C. § 1691a(e) as including "any person who regularly extends . . . credit," and "any person who regularly arranges for the extension . . . of credit," Lasco Ford and Joseph Pontiac are ECOA "creditors" because the record evidence demonstrates that Lasco Ford and Joseph Pontiac regularly extend credit and arrange for the extension of credit for their customers under retail installment sales contracts. Fultz also relies on Treadway for the proposition that dealerships such as Lasco Ford and Joseph Pontiac that actively engage in setting credit terms, down payment amounts, interest rates, and other conditions of credit while negotiating with financial institutions on behalf of credit applicants meet the 12 C.F.R. § 202.2(l) definition of a "creditor."

Fultz's argument that the Lasco Ford and Joseph Pontiac dealerships are ECOA "creditors" fails to address the narrower issue of whether Lasco Ford and Joseph Pontiac are ECOA "creditors" for purposes of the adverse action notice requirements of 15 U.S.C. § 1691(d). Only "each creditor taking adverse action" must comply with the notice requirements of § 1691(d). 12 C.F.R. § 102.9(g). The Treadway court found that a dealership's unilateral decision not to submit a credit application to any lender constituted the "adverse action" of effectively denying credit. Treadway, 362 F.3d at 975. In Gillom, the district court never reached the issue of whether the defendant dealership was required by § 1691(d) to issue an adverse action notice because there was no evidence in the record to support an initial finding that the dealership was a "creditor." Gillom, 444 F.Supp.2d at 771. As reasoned in Madrigal v. Kline Oldsmobile, Inc., 423 F.3d 819 (8th

11

Cir. 2005):

> . . . . The notification provision of the ECOA provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2) (1998). Notification of the reasons for adverse action must be given in writing. Id. Under this provision, [dealership] Kline would be liable to [credit applicant] Madrigal if (1) Kline is a "creditor," (2) Kline took "adverse action" with respect to Madrigal's second credit application, and (3) Kline failed to provide Madrigal written notification of its reasons for adverse action. The parties devoted significant time in their briefs and oral arguments addressing whether Kline is a "creditor" as defined in the implementing regulations of the Act. We need not decide this question, however, because we conclude that Kline – creditor or not – did not take adverse action on Madrigal's credit application. Having taken no adverse action, Kline had no obligation to provide written notification under the Act.

Madrigal, 423 F.3d at 822. Likewise, this court need not decide the question of whether Lasco Ford or Joseph Pontiac are "creditors" under 15 U.S.C. § 1691a(e) as persons who regularly extend credit or regularly arrange for the extension of credit because, creditor or not, neither Lasco Ford nor Joseph Pontiac took adverse action on Fultz's credit applications. Having taken no adverse action, Lasco Ford and Joseph Pontiac had no obligation to provide Fultz written notification of adverse action under the ECOA[1] unless they knew or had reason to know the financial institutions would not be issuing the necessary notices. Madrigal, 423 F.3d at 822; 12 C.F.R. § 202.2(l); Sovereign Bank, 2004 WL 834721, at *4. Moreover, Fultz does not even assert that she failed to receive adverse action notices form these institutions.

---

[1] Fultz dedicates significant argument to the proposition that dealerships that sell motor vehicles under retail installment sales contracts are "creditors" under the Truth in Lending Act ("TILA"), which Fultz maintains contains a more restrictive definition of "creditor" than the ECOA, and therefore Lasco Ford and Joseph Pontiac are "creditors" for purposes of the ECOA. In that Lasco Ford and Joseph Pontiac owed no duty under the ECOA to send Fultz a written adverse action notice, the court need not address Fultz's arguments under the TILA.

Construing the pleadings and evidence in a light most favorable to Fultz, and as a matter of law, neither Lasco Ford nor Joseph Pontiac are "creditors" for purposes of the ECOA who were required to send Fultz a written adverse action notice. Amway Distributors, 323 F.3d at 390. Fultz has not come forward with evidence in opposing Lasco Ford's and Joseph Pontiac's motions for summary judgment to support her ECOA claims that the dealerships are liable for failing to maintain records. Anderson, 477 U.S. at 248, 252; First Nat'l Bank, 391 U.S. at 270; McLean, 224 F.3d at 800. Lasco Ford and Joseph Pontiac are entitled to summary judgment of Fultz's ECOA claims as a matter of law. Amway Distributors, 323 F.3d at 390.

## B. FCRA

An "adverse action" under the FCRA has the same meaning as an "adverse action" taken under the ECOA. See 15 U.S.C. § 1681a(k)(1)(A). As reasoned in Section IV, A above, neither Lasco Ford nor Joseph Pontiac took "adverse action" under the ECOA on Fultz's credit applications. Consequently, Fultz cannot recover on her claim that Lasco Ford and Joseph Pontiac are liable under the FCRA for failing to issue adverse action notices. Id; Amway Distributors, 323 F.3d at 390. Fultz has not proffered evidence to support her FCRA claims that Lasco Ford and Joseph Pontiac are liable for failing to maintain records. Anderson, 477 U.S. at 248, 252; First Nat'l Bank, 391 U.S. at 270; McLean, 224 F.3d at 800. Lasco Ford and Joseph Pontiac are entitled to summary judgment of Fultz's FCRA claims as a matter of law. Amway Distributors, 323 F.3d at 390.

## V. Conclusion

Plaintiff April Fultz's motions for partial summary judgment are hereby DENIED. Lasco Ford's motion for summary judgment is hereby GRANTED. Joseph Pontiac's motion

for summary judgment is hereby GRANTED. Fultz's claims are hereby DISMISSED in their entirety.

SO ORDERED.

Dated: November 13, 2007

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 13, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk